UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 3 0 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

DENNIS CAEZ, )
)
Plaintiff, )
)
)
v. ) Civil Case No. 10-1535 (RJL)
)
THE UNITED STATES, )
)
Defendant. )

## MEMORANDUM OPINION
(September 2͏9, 2011) [#10, #14, #15]

Plaintiff Dennis Caez ("Caez"), a former United States Army Active Guard Reserve ("the Reserve") officer, is challenging the decision of the Army Board for Correction of Military Records ("ABCMR") denying his application to set aside his involuntary separation from the Army. Caez brings his claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Currently pending before the Court are the parties' cross-motions for summary judgment, as well as the plaintiff's Motion to Supplement the Administrative Record. Upon review of the pleadings, the entire record, and the applicable law, defendant's motion is GRANTED, and plaintiff's motions are DENIED.

## BACKGROUND

In 2001, Caez was a First Lieutenant in the Reserve, serving as an operating room nurse, assigned to the Winn Army Community Hospital in Fort Stewart, GA. Am. Compl. 1 [Dkt. #4]; Def.'s Stmt. Facts 1 [Dkt. #10-1]. He had been commissioned as a

1

Second Lieutenant three years earlier, having previously served in the Army as an enlisted medic. AR 28 [Dkt. #8,9].

Starting that summer, however, a series of events unfolded that culminated in his discharge from the Army. Within an approximately half-year period, Caez reported late to work and physical training formations on multiple occasions, AR 176, 180, and twice left his post without notifying his superiors, AR 180. In addition, he twice verbally disrespected a senior officer, AR 171, 180-81; and tested positive for methamphetamines on two drug tests, administered weeks apart, AR 297-98, 300. In response to his positive drug tests, Caez submitted sworn statements to his commander and the Army Criminal Investigative Division in which he denied knowingly using drugs. AR 299, 303-04. He claimed instead that a woman he met at a nightclub in Kissimmee, Florida and with whom he spent the night, "spiked" his drink with some unknown drug. Unfortunately, however, he was unaware of the woman's name or any means to contact her. AR 299, 303-04.

To say the least, Caez's conduct did not go unnoticed. On two separate occasions, his superiors counseled him and warned him that his behavior was inappropriate. AR 171, 179-80. More importantly, Caez was not promoted to Captain as scheduled in September of 2001. AR 192. Indeed, following Caez's positive drug tests, the Army initiated Uniform Code of Military Justice ("UCMJ") Article 15 proceedings against him seeking nonjudicial punishment for adultery and wrongful use of a controlled substance. *See* AR 162. In February of 2002, Caez's commanding general, Major General Buford Blount, acquitted him of these Article 15 charges but administratively reprimanded him

through a General Officer Memorandum of Reprimand ("GOMOR"), for adultery and conduct unbecoming an officer. AR 162, 293-94. And, on February 12, 2002, Caez was transferred from his operating room assignment to other duties and was issued a referred Change of Duty-Officer Evaluation Report ("OER"), which included an "unsatisfactory" rating. Am. Compl. ¶ 27; AR 283-86. Although Caez submitted a written rebuttal to the GOMOR, Major General Blount nonetheless filed the GOMOR in Caez's official military personnel file. AR 184-85, 287. Then, on April 11, 2002, Major General Blount informed Caez that he was initiating a separation action from the Army against him, for "personal misconduct involving adultery, conduct unbecoming an officer, and professional dereliction," citing Army Reg. 600-8-24, ¶ 4-2(b). AR 195.

Meanwhile, Caez's personal life was undergoing a similar upheaval. Separated from his wife since 1999, Caez was finally divorced on March 28, 2002. AR 134-36. In addition, Caez was receiving periodic treatment and medication for insomnia. AR 414, 428-30; Am. Compl. ¶ 2, 35. In fact, on May 2, 2002, Caez sought a medical evaluation for "difficulty initiating and maintaining sleep" from a private doctor, who stated that his "impression [of Caez's condition] is that of periodic limb movements with restless legs." AR 419, 425.[1] And, in June of 2002, Caez was twice granted three-week, emergency leaves to visit his ailing mother, who passed away while he was on leave, in Puerto Rico. Am. Compl. ¶ 36.

---

[1] Caez claims that he was suffering from anxiety from insomnia and a car accident but was reluctant to seek treatment. Am. Compl. ¶¶ 8-9. He did pursue additional treatment for insomnia and states that he reported for sick-call to an Army health clinic on August 8, 2002. Am Compl. ¶ 38.

3

On June 11, 2002, Army Personnel Command informed Caez that he was entitled to a Board of Inquiry ("BOI") hearing before the separation action, under Army regulations. AR 164; *see also* Army Reg. 600-8-24, ¶ 4-6(a). Caez initially chose to participate in the BOI and was notified it would occur on August 1, 2001. AR 153, 157-58. His attorney, however, requested and received a postponement until August 13. AR 152. Then, on August 9, Caez submitted a memorandum to his chain of command, signed by himself and his attorney (a retired Army judge advocate). AR 200.[2] In the memo, Caez waived his "right to appear before the [BOI]" and stated he understood that "there will be no [BOI] upon submission of this waiver." AR 200. Caez further indicated he understood that if the Army deemed separation appropriate, then his character of service designation would be "Honorable or Under Honorable Conditions." AR 200. As such, the Army proceeded with the separation.

On October 23, 2002, an Army doctor gave Caez a pre-separation, medical exam. AR 412-15. On the exam form, Caez indicated "yes" to the questions "Have you ever had or do you now have… frequent trouble sleeping [or] received counseling of any type[?]" AR 413. The doctor found, however, that Caez was "normal" (as opposed to "abnormal") in all the clinical evaluation factors, including "neurologic" and "psychiatric," and concluded that he was "qualified for service—separation." AR 416, 418. Six days later, with Major General Blount's and the Deputy Assistant of the Army's recommendation and approval, AR 150-152, and pursuant to Army Reg. 600-8-24, ¶ 4-

---

[2] Simultaneously, Caez submitted a Request for Voluntary Release from Active Duty ("REFRAD"). AR 201.

2(b), Caez was involuntarily separated from the Army with a service characterization of general, under honorable conditions. Am. Compl. ¶ 41-42; AR 12, 308.

On August 26, 2009, Caez applied to the ABCMR for review and requested that it set aside his discharge and reinstate him to receive back pay. AR 4, 26, 41.[3] In a seventeen-page opinion, the ABCMR denied Caez's application on November 5, 2009, finding that the "separation processing was accomplished in accordance with the applicable regulation" and that Caez "voluntarily and willingly" waived his BOI. AR 15, 4-20.

Undaunted, Caez appealed that decision to this Court requesting a declaratory judgment to "set aside that part of the decision of the [ABCMR], limited to denying plaintiff's alternative request to set aside his involuntary discharge from the Army...." Am. Compl. 1. He claims, in essence, that the ABCMR's decision was arbitrary and capricious, unsupported by substantial evidence, and noncompliant with Army regulations. Am. Compl. 13.[4] The parties filed the pending cross-motions for summary

---

[3] Caez had first sued in the U.S. Court of Federal Claims, but that action was stayed pending the ABCMR's decision. Am. Compl. ¶ 45-46. After the ABCMR denied his application, Caez waived his monetary relief claims in an unopposed motion to transfer, and the Claims Court transferred the remaining claims to this Court. Id. at ¶ 48.; Plaintiff's Unopposed Motion to Transfer at 1-2, Caez v. United States, No. 08-767 (Fed. Cl. Feb. 3, 2010), ECF No. 19.

[4] Despite devoting the entirety of his briefing arguments to the *ABCMR's* decision, Pl.'s Mem. Supp. Cross-Mot. Summ. J. (Pl.'s Mem.) 2-8, 12-19 [Dkt. #14-1]; Pl.'s Reply Def.'s Opp'n (Pl.'s Reply) 1-5 [Dkt. #24], Caez also claims that the *Army's* underlying decision to discharge him was arbitrary and capricious, and, in his recitation of facts, injects contentions that the "adverse personnel actions violated regulations, including the reprimand, the derogatory OER, and promotion list removal" and that "Caez was never legally separated from the Army," Am. Compl. 10 ¶ 44, 13. Those underlying personnel

judgment, and Caez also moved to supplement the administrative record.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under the APA, however, "[s]ummary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)). This Court, however, will only overturn an agency's decision if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To do so, the agency must have either failed to follow the requisite legal procedure or utterly failed to consider an important aspect of the problem. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (listing instances where agency action is arbitrary and capricious). The Court will not disturb the decision of an agency that has examined the relevant data

---

actions, however, are *not* reviewable by this Court. *See Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006) ("[J]udges are not given the task of running the military.") (internal citations and quotations omitted); *see also Kreis v. Sec'y of the Air Force*, 406 F. 3d 684, 686 (D.C. Cir. 2005) ("[W]hile the district court's jurisdiction does not reach military personnel decisions, the court has jurisdiction to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take corrective action.") (internal citations and quotations omitted). And, since the ABCMR directly reviewed and upheld the Army's separation decision, this Court's review is already limited to the agency's record. *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). Having done so, this Court can discern no material distinction for review purposes between Caez's separate causes of action.

and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made. *See Motor Vehicle Mfrs.*, 463 U.S. at 43. Indeed, the agency's decision need not be a model of analytic precision as long as the agency's path may reasonably be discerned." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (internal quotations omitted).[5]

Finally, when reviewing a decision by a military correction board, a Court must do so under an "unusually deferential application of the arbitrary and capricious standard of the APA." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002) (internal citations and quotations omitted). Only the most egregious decisions do not satisfy this very deferential standard of review. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989). A "rational connection between the facts found and the choice made" is all that is necessary to sustain its decision *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotations omitted).

## ANALYSIS

### I. ABCMR's Decision Was Neither Arbitrary Nor Capricious.

Caez contends that the ABCMR "committed an injustice" by not finding his BOI waiver ineffective because of his mental state and his attorney's erroneous advice, and by making various factual and legal errors, including failing to disclose an internal memo containing alleged errors. *See* Pl.'s Mem. 12-17; Am. Compl. ¶¶ 49-53. For the

---

[5] "In agency cases, limited extra-record discovery is only appropriate when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 339 (D.C. Cir. 2011) (internal citations and quotations omitted).

following reasons, I disagree.

First, the ABCMR acknowledged Caez's illness and loss, AR 6 ¶ 4(b), -(g), 18-19, both in the context of his waiver and his prior misconduct, and still found "no evidence that he made this decision under coercion, stress, pressure, or lack of sleep." AR 18.[6] It specifically noted that if he had been unable to make this decision, his counsel could have advised him to delay the BOI again. *Id.* Moreover, it adequately explained that it reviewed the facts on the record and still found that Caez "voluntarily and willingly" waived his BOI. *Id.* Simply put, there is no indication in the record that the ABCMR failed to consider any critical evidence or reached an arbitrary decision with respect to the voluntariness of his waiver.

Caez also argues that his waiver was invalid because he relied on ineffective assistance of counsel— to wit, he was actually ineligible to request release through the REFRAD because of the pending separation. Pl.'s Mem. 10, 17; Army Reg. 600-8-24, Table 2-1. Caez, however, never argued ineffective assistance of counsel to the ABCMR, raising it here for the first time in his summary judgment pleadings. *See* AR

---

[6] Caez also confusingly contends (in a section labeled "Factual Background") that his "effective 'resignation' was not intelligently made [because] he showed that in 2002 substantial questions existed as to the sufficiency of the elimination allegations" and then challenges those misconduct allegations by attacking earlier personnel actions against him, including the GOMOR and officer evaluation report. Pl.'s Mem. 8-10; *see also* Am. Compl. ¶ 44. As previously stated, those underlying personnel actions are not directly reviewable by this court. To the extent Caez is arguing that he waived his BOI because he thought the misconduct allegations were too deficient to merit a hearing, then he made an unwise decision, but not an "ineffective" one.

24-40; *compare* AR 38-39 *with* Pl.'s Mem. 10, 17.[7] Since APA review by this Court is limited to the record before the agency, this argument must be dismissed. *Commercial Drapery*, 133 F.3d at 7.[8] As such, the ABCMR reasonably concluded that Caez's waiver of his BOI was voluntary and effective.

Next, Caez contends that the ABCMR committed various legal and factual errors. *See* Am. Compl. ¶¶ 25-32, 44, 50-52; Pl.'s Mem. 2-3, 8-10, 12-14. In particular, he contends that he was not given a fair opportunity to respond to material relied on by the ABCMR. Pl.'s Mem. 2. By statute, the ABCMR is required to provide applicants with copies of all relevant ex parte communications. 10 U.S.C. § 1556(a) ("The Secretary… shall ensure that an applicant seeking corrective action by the Army Review Boards Agency…is provided a copy of all correspondence and communications… to or from the agency or board, or a member of the staff of the agency or board, with an entity or person outside the agency or board….").

Specifically, Caez focuses on an internal memorandum prepared in October of 2009 ("October memo"), by an Army Review Boards Agency physician, analyzing his ABCMR application. Pl.'s Mem. 2, 12-17.[9] He contends, in essence, that it was a

---

[7] Caez does not claim his counsel was ineffective before the ABCMR—only regarding the waiver. Pl.'s Mem. 10, 17.

[8] Even so, Caez's argument is meritless. Caez relies on *Krzeminski v. United States*, 13 Cl. Ct. 430 (Fed. Cl. 1987), but Krzeminski had waived his discharge-board rights based on his Navy attorney's erroneous advice that such military boards are unfair. *Id.* at 438-39. Such flawed advice is not analogous to the technical error with Caez's resignation request, and this error is insufficient to discount Caez's unequivocal waiver.

[9] In a misguided detour, Caez also alleges that he did not receive a copy of a

"medical advisory opinion" and should have been disclosed to him so he could rebut it. Pl.'s. Mem. 2-8; Pl.'s Reply 1-2, 4-5. The ABCMR, however, was not required to disclose the October memo under section 1556 since it is an internal analysis of his record and not an ex parte communication or an investigative report. 10 U.S.C. § 1556(a). Further, Caez's reliance on *Neal v. Sec. of the Navy*, 639 F.2d 1029 (3d. Cir. 1981) is misplaced. Pl.'s Mem. 3; Pl.'s Reply 4-5. In *Neal*, the naval review board had used undisclosed, investigative reports prepared by a third party, the Naval Investigative Service, thereby precluding the plaintiff's rebuttal. 639 F.2d at 1032. But, the October memo did not report or find any new facts not already before the ABCMR or within Caez's possession. As such, Caez did not suffer an injustice of the kind endured by the plaintiff in the *Neal* case.

Next, Caez argues the October memo contains "errors" about his drug use, sleep disorders, speech impediment, and polygraph results, Pl.'s Mem. 12-14; Pl.'s. Reply 1, 4-5, but fails to point to any specific factual errors contained therein. In short, his arguments amount to unfounded disagreements with the October memo's analysis, *see*,

---

February 9, 2002 medical record cited by the defendant, and that an August 8, 2002 health record, apparently inadvertently omitted from the administrative record, shows that his insomnia affected his waiver. Pl.'s Mem. 14-16. The defendant, noting that the August record was not included in the administrative record, had made an argument based on the February record in its brief. Def.'s Mem. Supp. Mot. Summ. J. (Def.'s Mem.) 8, n.7 [Dkt. #10-2]. So, Caez seeks to supplement the August record to rebut that argument. Pl.'s Mot. Suppl. AR 2-4 [Dkt. #15]; Pl.'s Reply 2-4. Yet, the ABCMR specifically considered Caez's original argument in his application that he submitted his waiver "after three days without sleep." *Compare* AR 6 ¶ 4(g) *with* AR 37 ¶ 33. Accordingly, even if Caez did not receive the February record, he was not prejudiced and, further, has demonstrated no circumstances to justify supplementing the record. *See James Madison Ltd. v. Lutwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

*e.g.*, Pl.'s Mem. 13 ("Then [the October memo] confuses RSL [sic] symptoms with PLM symptoms..... According to DSM-IV and medical literature, , [sic] PLM affects the quality of sleep not the onset, while RLS affects the onset.... With PLM and RLS, Caez suffered from both the lack of or amount of sleep, and its quality.") and unsubstantiated allegations about the memo's "intent," *see, e.g., id.* at 12 ("[T]he opinion's tone betrays a decided agenda...."); *id.* at 13 ("[T]he advisory opinion adds double adjectives to infuse doubt.... The intent of the advisory opinion was to dial-down or discredit Caez's symptoms.").[10] Again, this Court finds no indication that the ABCMR failed to consider critical evidence or made an irrational decision.

Caez next complains about a variety of other supposed legal and factual errors, *i.e.*, that the ABCMR: did not adequately consider his medical condition and personal circumstances since it "ignores" an alleged Army culture that discourages soldiers from psychiatric treatment, Am. Compl. ¶¶ 50-52; ignored his cited precedent, Am. Compl. ¶ 49; overlooked that "[t]here was no medical separation exam or report," Am. Compl. ¶ 49; and erred by stating that Caez served in the Army for only 17 ½ years, Am. Compl. ¶

---

[10] Caez cites to *Werner v. United States*, 642 F.2d 404 (Ct. Cl. 1981) for legal support that an internal memorandum may show an agency's errors, but that case is factually inapposite. In *Werner*, the court found that the "ABCMR did not specify the factual or legal grounds for its decision" and so looked to an internal, agency memo that had both material omissions about the plaintiff's insanity record and a material error about whether the plaintiff had performed military duties during a certain period. *Id.* at 407-08. Here, the ABCMR provided a more than adequate explanation of its reasoning, and Caez has not shown that the October memo contained any material errors. For instance, Caez contends that the memo "mistakenly says Caez had only RLS." *Compare* Pl.'s Mem. 13 *with* AR 21 (October memo: "He was thought to possibly have 'Restless Leg Syndrome.'"). But, Caez relies on only his private doctor's impression "periodic limb movements with restless legs," AR 419, and a post-discharge diagnosis of a "neurological sleep disorder... a variation on restless leg syndrome," AR 38, ¶ 39.

53. These too, however, cannot survive scrutiny on this record.

For example, the ABCMR explicitly considered Caez's reluctance to seek treatment and found it unpersuasive. AR 19. And, the ABCMR's detailed opinion cites to Caez's briefs on numerous points and shows that the agency used its discretion to weigh evidence and consider factually similar precedent. AR 5-7. Similarly, Caez's contention that "[t]here was no medical separation exam or report" is contradicted by the record. *Compare* Am. Compl. ¶ 49 *with* AR 416-18. Finally, regarding the ABCMR's statement about Caez's term of service, the record shows that ABCMR considered the evidence before it, including Caez's military records, AR 12, and his own ABCMR application which stated that he had "nearly 18 years" of service, AR 5 ¶ 3, before making this statement. Caez further fails to explain how this fact was relevant to this Court's review of the ABCMR's decision, since his arguments that the ABCMR thought him "expendable" and that he "blindly threw away his career" are utterly nonsensical. Am. Compl. ¶ 53.

Lastly, the ABCMR reasonably concluded that Caez's discharge was warranted based on his misconduct. Army regulations provide for initiation of a separation action against an officer for, *inter alia,* "substandard performance of duty… [or] misconduct, moral or professional dereliction." Army Reg. 600-8-24, ¶ 4-2.[11] The ABCMR

---

[11] The regulations further define misconduct to include: "mismanagement of personal affairs that are unfavorably affecting an officer's performance of duty," "mismanagement of personal affairs to the discredit of the Army," and "act of personal misconduct (including but not limited to acts committed while in a drunken or drug intoxicated state)." *Id.* And, "the Government is responsible to establish, by preponderance of the evidence, that the officer has failed to maintain the standards

considered the applicable standard, AR 13-14, 17, and then, based on the evidence, reasonably concluded: "The applicant's service was marred with misconduct. He was properly discharged... given the circumstances in this case." AR 19. Caez does not specifically deny the misconduct charges supporting his elimination, rather he tries to challenge the standards applied in the underlying personnel actions and to suggest his insomnia was an excuse. *See* Pl.'s Mem. 8-10. He misses the point. The ABCMR was free, as it did, to weigh the evidence of his misconduct and his condition against the standards required for military officers, and reach its decision. AR 16-18.[12] Considering the deferential standard this Court must accord military correction boards, *Musengo*, 286 F.3d at 538, the ABCMR's decision is completely rational, based on the administrative record, and must therefore be upheld.

## II. Plaintiff Has Failed to Show Requisite Need to Supplement the Record.

Courts ordinarily restrict their review to the administrative record under the APA. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). As such, a party must show *unusual* circumstances to depart from this standard and supplement the record. *See id.* (listing circumstances that would call for supplementing the record: "(1)The agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with

---

desired for their grade and branch." *Id.* at ¶ 4-6(a).

[12] The ABCMR also noted that while the administrative flagging of Caez's personnel record was flawed (his file was not flagged until June of 2002), he was correctly not promoted in 2001 because of the pending investigations. AR 11, 19.

background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review") (internal citations and quotations omitted). Caez, however, has failed to demonstrate any such circumstances here.

First, with respect to the thirteen pages of various documents omitted from the administrative record that he wishes to add, plaintiff does not even attempt to explain how these documents are material. *See* Pl.'s Mot. Suppl. A.R. 1.[13] Next, Caez seeks to add certain cover sheets for his records requests and three post-administrative-record affidavits in an attempt to show that he was previously unaware of certain documents, including the October memo and a February 2002 medical record, and to add support for his insomnia claim. *Id.* at 1-2. Yet, there is no indication of bad faith or abuse of discretion by the ABCMR that would have warranted the inclusion of these documents in the administrative record. Neither is this a case where the Court's review is hampered by an incomplete record. Simply put, Caez has failed to show *any* material omissions in the more than 700 pages of administrative record, and the ABCMR has more than adequately explained the reasoning underlying its decision. *See* AR 17-20. Thus, Caez's motion must be, and is, DENIED.

---

[13] Caez also seeks to supplement a pay statement showing 21 years of military service. *Id.* Again, whether the ABCMR believed Caez served 18 (as even Caez had indicated) or 21 years is irrelevant to its decision affirming his separation.

## CONCLUSION

For all of the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED, plaintiff's Cross-Motion for Summary Judgment is DENIED, and plaintiff's Motion to Supplement the Administrative Record is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge